Judge Simpson
delivered the opinion of the Court.
A judgment was rendered against the appellant, in the city court of Louisville, for twenty-five dollars, as a fine for piloting the steamboat “Buckeye” over the falls of the Ohio river, without having been first elected and qualified by the general council of the city of Louisville, as a falls pilot; and he has appealed from that judgment.
It appeared on the trial that the appellant resided in Jeffersonville, Indiana, and was there employed to navigate the steamboat Buckeye, as pilot, over the falls of the Ohio river; that he took charge of said steamboat at the wharf of Louisville, above the falls, and in the character of pilot, not being either the master or owner of the boat, navigated and steered her over the falls in the Ohio river, and rounded to at Portland wharf, which is within the city limits below the falls. As his authority for acting as pilot, he read in evidence a certificate from the inspectors who had been appointed under an act of congress, approved August 30th, 1852, for the district of Louisville, to the effect that they had examined him touching his qualifications as a pilot of steamboats, and having found him to be a suitable and safe person to be entrusted with the powers and duties of a pilot of steamboats, had licensed him to act as such, for one year, on the Ohio river, from Cincinnati to New Albany, Indiana. He also read in evidence a certificate of one of the inspectors, that he had taken an *601 oath before him, that he would faithfully discharge the duties of his office as required of him by the aforesaid act of congress.
The act chartering the city of Louisville, approved March 24th, 1851, contains a provision, “that any person piloting boats or rafts over the falls of Ohio, who is not elected and qualified as a falls pilot under this charter, shall be fined for so doing a sum of not less than twenty dollars, nor more than fifty dollars, to be recovered in the city court of Louisville. But it is provided, that nothing herein shall be construed so as to prevent masters or owners from taking their own boats or rafts over the said falls without a falls pilot.”
The act of congress which was approved August 30th, 1852, provides for the appointment of two inspectors within the respective districts therein enumerated, Louisville being one of them.
It authorizes such inspectors to license and classify all engineers and pilots of steamers carrying passengers.
It provides that when any person claiming to be a skillful pilot for any such vessel shall offer himself for a license, the inspectors shall make diligent inquiry as to his character and merits, and if satisfied that he possesses the requisite skill, and is trustworthy and faithful, they shall give him a certificate to that effect, licensing him, for one year, to be a pilot of any such vessels within the limits prescribed in the certificate.
It declares it to be unlawful for any person to serve as pilot on any such vessel, who is not licensed by the inspectors, and that any one so offending shall forfeit one hundred dollars for each offence.
It was during the existence of the license which the appellant had obtained from the inspectors, that he acted as pilot in navigating the steamer Buckeye over the falls; and the question to be decided is, was it his duty, in addition thereto, to have been elected and qualified as a falls pilot, by the general council *602 of the city of Louisville, before he was legally authorized to act in that capacity?
1. Congress has “power to regulate commerce with foreign nations, & among the several states and with the Indian tribes.” {Art. I, sec. 8.) The appointment of pilots is a regulation of commerce, (12 Howard’s Rep. 316,) but the states may legislate upon the subject where Congress has not done so.
By the constitution of the United States, in the third clause of the eighth section of the first article, it is provided that “the congress shall have power to regulate commerce with foreign nations, and among the several states, and with the Indian tribes.”
The settled doctrine seems to be, that the power to regulate commerce includes the regulation of navigation. As pilots are essential to the safety of navigation, it would seem to result as a necessary consequence, that their appointment, the regulation of their qualifications, responsibilities and powers, would be in effect regulations of navigation, and consequently of commerce, within the meaning of this clause of the constitution.
It was decided by the supreme court of the United States, in the case of Cooley vs. The Board of Wardens of the Port of Philadelphia, &c., (12 How. R., 316,) that congress has the power, under the constitution, to regulate the appointment, the powers and the duties of pilots, but that until this power was exercised by congress, the states might legislate upon the subject, the mere grant of such a power to congress not implying a prohibition on the states to exercise the same power; that it was not the existence of such a power, but its exercise by congress, which might be incompatible with the exercise of the same power by the states.
This decision being on a question arising under the constitution of the United States, must, according to the decisions of this court, be deemed authoritative, and, as such, it settles the doctrine that the states can only pass laws for -the regulations of pilots and pilotage, in the absence of congressional legislation on the subject, which may be incompatible with such state regulations.
If, when the act chartering the city of Louisville was passed, congress had not then enacted any law regulating the mode in which pilots should be li *603 censed or appointed, or prescribing their duties, having since legislated upon the subject, the inquiry arises, are the regulations prescribed in that legislation in relation to the powers of pilots who have been licensed by the inspectors, inconsistent with the right claimed by the city of Louisville to require such pilots also to be elected and qualified by the general council?
2. The act of Congress of the 30th August, 1852, for appointing inspectors in certain districts, and au thorizing them to license engineers and pilots, supercedes any state law upon the subject; and a license from such inspectors is a protection to the holder against any penalty denounced by a state law for neglecting to obtain a license trader its authority. And a license to pilot boats on the Ohio river, between two points, embracing the falls of Ohio, authorizes the holder to pilot over the falls.
*603 As the selection and qualification of persons to act as pilots in navigating the falls, seemed to be essentially local, adopted as a measure of precaution and safety for the preservation of vessels and the lives of passengers within the limits of the state, it was supposed, before the subject had been duly considered, that the act of congress might be regarded as referring to a different class of pilots, embracing those only who were employed as regular pilots on steamboats in the ordinary course of navigation, and not applying to those whose duties depended upon the local necessities which made their appointment proper. But to sustain this view, it would be indispensably necessary to limit the power and authority of such pilots as are appointed and licensed under the act of congress, and confine them to one class of objects; when no such restriction is imposed, either by the act itself, or by the terms in which the authority has been conferred under it.
The license to the appellant authorized him to act as pilot on the Ohio river within certain prescribed limits. The authority conferred was general, it was not restricted to any particular class of duties, but empowered him to act as pilot on any part of the river within the limits specified. The act of congress evidently contemplated that such power should be conferred upon him, and authorized it to be done.— He had a right to exercise this power independently of any state regulation upon the subject. This right could not be affected or impaired by any state prohibition. The requisition that he must be elected and qualified by the city council, before he should *604 have a right to act as a falls pilot, was a virtual prohibition of the exercise of that power which he derived under the act of congress, and as such was inoperative and void.
3. A license, under the act of Congress of 2d March, 1837, from the Governor of Indiana, to pilot boats over the falls of Ohio was a valid license.
But the appellant relied upon another defense which would have been equally valid, if the act of congress of August, 1852, had not been passed. He produced in evidence a commission from the governor of the state of Indiana, in which state he resided, appointing him a pilot at the falls of the Ohio river, and authorizing him to act as such for the term of four years.
By an act of congress, approved the 2d of March, 1837, it was enacted “that it shall and may be lawful for the master or commander of any vessel coming into or going out of any port, situate upon waters which are the boundary between two states, to employ any pilot duly licensed or authorized by the laws of either of the states bounded on the said waters, to pilot said vessel to or from said port, any law, usage or custom to the contrary notwithstanding.”
As by this act of congress it was made lawful for the master or commander of the vessel to employ the appellant to act as pilot, his acting in that capacity could not, therefore, have been unlawful, nor could it have subjected him to a penalty under the laws of this state. If then, there be any doubt in reference to the power of a person licensed as a pilot, by the inspectors, under the act of congress of August, 1852, to act as such, independently and in exclusion of all state regulations on the subject, there can be no doubt, that a person residing in the state of Indiana, and regularly commissioned by the governor of that state to act as a pilot at the falls of the Ohio river, has, under the act of 1837, a right to act as such, without any authority from the state of Kentucky. This act was passed by congress for the very purpose of preventing conflicts between the laws of different states with respect to the employment of pilots, and fully embraces the case under consideration.
*605 Wherefore, the judgment is reversed, and cause remanded for a new trial, and further proceedings in conformity with this opinion.